UNITED STATES v. ONE HUNDRED AND THIRTY–TWO PACKAGES OF SPIRITUOUS LIQUORS AND WINES et al.

(Circuit Court of Appeals, Eighth Circuit.   October 5, 1896.)

No. 691.

1. FRAUDS ON THE REVENUE—BRANDS OF LIQUORS.

Rev. St. § 3449, which provides that "whenever any person ships, transports, or removes any spirituous or fermented liquors or wines, under any other than the proper name or brand known to the trade, as designating the kind and quality of the contents of the casks or packages containing the same," he shall forfeit such liquors and pay a fine, is not a trade-mark regulation, but is for the prevention and detection of

fraud on the revenue, and its validity is not affected by the fact that it incidentally tends to the discovery or suppression of private frauds.

2. SAME—"PACKAGES" OF WINES OR LIQUORS.

The term "package," as used in Rev. St. § 3449, includes every box, barrel, or other receptacle into which distilled spirits have been placed for shipment or removal, either in quantity or in separate small packages, as bottles or jugs.

## In Error to the District Court of the United States for the Eastern District of Missouri.

The United States filed in the district court of the United States for the Eastern district of Missouri an information to forfeit certain packages of liquors and wines described in the information for alleged violation of section 3449 of the Revised Statutes of the United States, which reads as follows: "Whenever any person ships, transports, or removes any spirituous or fermented liquors or wines, under any other than the proper name or brand known to the trade as designating the kind and quality of the contents of the casks or packages containing the same, or causes such an act to be done, he shall forfeit such liquors or wines, and casks or packages, and be subject to pay a fine of five hundred dollars."

William C. Richardson, public administrator for the city of St. Louis, in charge of the estate of Lehman Meyer, deceased, the claimant of the property, filed a demurrer to the information, which was overruled in an opinion as follows (Thayer, District Judge):

"Section 3449, Rev. St. U. S., which first appears as a proviso to section 29, Act July 13, 1866 (14 Stat. 156), was designed to prevent a fraudulent evasion of the internal revenue laws. Congress acted upon the assumption that persons engaged in the manufacture or sale of spirituous and fermented liquors would be prevented to some extent from putting illicit goods upon the market, and that officers of the revenue would be aided somewhat in the discharge of their duties if dealers were required to brand all casks and packages containing spirituous liquors which they shipped or removed from one place to another with the true name by which they were known to the trade. The purpose was to make the exterior of every cask or package containing distilled spirits, when shipped, speak the truth with reference to its contents. Congress intended to prohibit dealers and manufacturers from resorting to any artifice whereby the contents of packages containing spirituous liquors might be concealed or disguised by the name under which the package was branded. It is easy to conceive how the enforcement of this provision of the law might operate to some extent to prevent fraud and to insure a faithful collection of the duties imposed by the government on distilled spirits. Such being the purpose of congress, it is quite immaterial (and it does not affect the validity of the statute in question) that the statute as framed also has some tendency to prevent private frauds. U. S. v. Loeb, 49 Fed. 636. See, also, Opinion of the Attorney General, 22 Int. Rev. Rec. p. 261, and Commissioners' Decision, 30 Int. Rev. Rec. p. 278. It cannot be denied that the facts stated in the informations bring the cases within the language of section 3449. Boxes or cases containing spirituous liquors in bottles appear to have been shipped, which boxes or cases were not so branded or marked as to indicate the true character of the liquors contained therein as they were at the time known to the trade. It is evident that when bottles containing spirituous liquors are inclosed and shipped in boxes or cases, there is as much necessity for requiring the boxes to be correctly branded, so as to indicate their contents, as when liquors are shipped in casks. We may readily conceive how the purpose which congress evidently had in view might be defeated by putting liquors in bottles, and inclosing them in boxes, if dealers were permitted to make shipments in that form without properly branding the boxes. Upon the whole the court concludes that the demurrer and the motion to quash should be overruled."

After the demurrer was overruled, the claimant filed an answer. The case was tried below upon the following agreed statement of facts:

"That the one hundred and twenty-seven packages of spirituous liquors and the five packages of wine mentioned in the information herein and

sought to be forfeited to the United States did, in fact, contain spirituous liquors and wines, respectively. That the said spirituous liquors and wines contained in said packages were compounded and prepared at the establishment of the Western Distilling Company, a corporation doing a distilling and rectifying business at Number 201 North Main street, in the city of St. Louis, Missouri; and that said liquors and wines, after being so compounded, were put into bottles marked and branded as hereinafter stated, and that said bottles were packed in one hundred and thirty-two cases or crates, which are the packages mentioned herein, and that the said packages were respectively marked and branded as hereinafter stated; that is to say: Fifteen of said packages and the bottles therein contained were marked and branded as containing 'J. & F. Martell Cognac.' Thirty-nine of said packages and the bottles therein contained were marked and branded as containing 'Booth and Company London Superior Old Tom Gin.' Forty of said packages and the bottles therein contained were marked and branded as containing 'Sir Robert Burnett and Company Vauxhall Old Tom Gin.' One of said packages and the bottle therein contained was marked and branded as containing 'John De Kuyper and Son Gin.' Eight of said packages and the bottles therein contained were marked and branded as containing 'Boonekamp Maagbitter.' Ten of said packages and the bottles therein contained were marked and branded as containing 'Farnet Branca.' Four of said packages and the bottles therein contained were marked and branded as containing 'Noilly Prat & Cie. Vermouth.' One of said packages and the bottle therein contained was marked and branded as containing 'Italy Vermouth Torino.' Four of said packages and the bottles therein contained were marked and branded as containing 'Curacao de Holland.' Five of said packages and the bottles therein contained were marked and branded as containing 'Eduard Pernod Absinthe.' Four of said packages and the bottles therein contained were marked and branded as containing 'Boker's Stomach Bitters.' One of said packages and the bottle therein contained was marked and branded as containing 'Yellow Chartreuse, L. Garnier.' That the several names and brands hereinbefore mentioned, and which were marked upon said packages, were each a name and brand known to the trade as designating a particular kind and quality of imported spirituous liquor or wine, and that the contents of said packages were respectively of the same generic class as the liquor or wine known to the trade under the name and brand marked upon the package, containing the same; that is to say, the packages bearing the mark 'Booth and Company London Superior Old Tom Gin' contained gin, and the packages marked 'J. & F. Martell Cognac' contained cognac brandy, etc., etc.; but that the spirituous liquors and wines contained in said packages respectively were not the specific kind and quality of spirituous liquor or wine known to the trade by the name and brand marked upon said packages, respectively, but differed from the spirituous liquors and wines known to the trade under said marks and brands, respectively, in taste, and in inferiority in quality of excellence. That the marks 'J. & F. Martell Cognac,' etc., are trade-marks known to the trade, indicating the source of manufacture; that the goods contained in the various bottles were lawfully compounded. That the several packages mentioned in the information herein, bearing the marks and brands above stated, were, between the 18th day of May, 1893, and the 12th day of October, 1893, transported in drays or wagons by the St. Louis Drayage Company, a common carrier in the city of St. Louis, from the distillery and rectifying establishment of the Western Distilling Company at 201 North Main street, St. Louis, Missouri, to the warehouse of the St. Louis Drayage Company, number 407 South Main street, St Louis, Missouri, said warehouse being a public warehouse under the control of said drayage company, and used by it as a place of deposit for goods intended for shipment by rail or river; and that said packages were deposited in said warehouse for the purpose of being shipped thence by railroad or river to purchasers or consumers. That said packages were seized by Charles F. Wenneker, collector of internal revenue for the First collection district of Missouri, as forfeited to the United States under the provisions of section 3449 of the Revised Statutes of the United States; that said seizure was made on the 9th day of November, 1893, on land, at the Eastern division of

the Eastern judicial district of Missouri, and that proceedings to enforce said forfeiture were commenced on the 17th day of November, 1893, and that said packages of liquors and wines were held in the custody of said Charles F. Wenneker, collector, under said seizure at the time of beginning said proceedings, and that said packages were taken into the custody of the marshal upon process issued herein by this court."

The lower court rendered judgment in favor of the claimant, and the United States sued out this writ of error.

William H. Clopton, for the United States.

Chester H. Krum, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges.

CALDWELL, Circuit Judge (after stating the facts as above). The agreed statement of facts concedes that the packages of liquors and wines in question were removed from the distillery and rectifying establishment under names and brands other than the proper names and brands known to the trade as designating the kind and quality of the contents of the packages. This admitted fact brings the case within the letter of the statute, and the packages are unquestionably liable to forfeiture if the statute is of any force or validity. We do not think a review of all the legislation on the subject of distilled spirits is essential to a right understanding of section 3449. It prescribes a rule in plain and unmistakable language. Its meaning is perfectly clear, and its purpose obvious. The contention of the learned counsel for the claimant that the section is nothing but a trade-mark regulation is not tenable. It is one of the numerous regulations prescribed by the internal revenue laws intended to prevent frauds on the revenue in the manufacture, removal, shipment, and sale of distilled spirits and other liquors and to aid in the detection of such frauds. The regulations for this purpose are very extensive and extremely minute. They embrace every step in connection with the manufacture and handling of spirits, from the introduction of the raw material into the distillery down to the rectification of the product, and its removal, shipment, and sale. The court cannot say that section 3449 does not conduce in any degree to prevent frauds on the revenue, or aid in their discovery and punishment. Unquestionably, an observance of the requirement that packages of liquor shall be shipped or removed only under names indicating truthfully their contents will aid the revenue officers to trace and identify such packages, and thereby verify the truth or falsity of the books and records of the distiller or rectifier. There are doubtless other ways familiar to the revenue officers in which the requirement of section 3449 tends to the detection and suppression of frauds on the revenue. Before a court would be authorized to hold an act of congress obsolete and inoperative, it would have to appear conclusively that it was totally inoperative for any lawful or useful purpose. When the statute relates to a subject-matter within the constitutional competency of congress to legislate upon, the presumption is that it serves a useful purpose. When a statute is susceptible of two constructions, one of which would render it valid and operative and the other press it beyond the constitutional competency of congress to enact, or render it inoperative, the former

construction will be adopted. The section is none the less a revenue regulation because its enforcement may tend to discourage the piracy of trade-marks, and prevent frauds upon those who consume the contents of the packages. These are mere incidents of the statute, and not its primary object. Congress has an undoubted right to legislate to prevent frauds on the public revenue, and the validity of such legislation is not affected by the fact that it incidentally tends to the discovery or suppression of private frauds.

Another contention of the claimant is that the section applies only to casks or receptacles of like character with casks, and that it does not apply to bottles, or boxes containing bottles. In support of this contention, we are cited to various sections of the internal revenue law relating to the gauging, inspection, marking, branding, and emptying of "a cask or package" of distilled spirits, where the term "package" is probably used in the sense of "cask," but we think the term is not used in this section in any such restricted sense. There is no connection or relation between the marking and branding required in the sections referred to and the requirement of section 3449 that packages shall not be shipped or removed "under any other than the proper name or brand known to the trade as designating the kind and quality of the contents" of the package. The "name or brand" here referred to is not placed on the package by any officer of the government, or under his direction. It is not an official name or brand. It is placed there by the distiller or rectifier, who, to prevent frauds on the revenue, and facilitate their discovery, is required to make the name or brand under which he ships or removes the package speak the truth. This requirement cannot be evaded by putting the contents of the package in small packages or bottles. In this case, not only the package containing the bottles, but the bottles themselves, were falsely named or branded. The term "package," as used in section 3449, includes every box, barrel, or other receptacle into which distilled spirits have been placed for shipment or removal, either in quantity or in separate small packages, as bottles or jugs.

We have set out in the statement the opinion of Judge Thayer on overruling the demurrer to the information. We fully agree with the reasoning and conclusion of that opinion. The judgment of the district court is reversed, and the cause remanded, with instructions to grant a new trial.