# CHARLESTON.

## State v. Goetze.

Submitted February 6, 1897—Decided April 24, 1897.

1. CIGARETTES—*Original Package—License—Interstate Commerce.*

    Cigarettes manufactured in another state,and imported into this State in the original package, may be sold in such original package; and the act of the legislature of West Virginia passed February 21,1895, amending and re-enacting the Code, c. 32, s. 66, so as to provide that a certain license fee shall be paid for selling cigarettes at retail, so far as it applies to cigarettes so imported and sold by the importer in West Virginia, is not an exercise of the police power of the State, but a regulation of interstate commerce, and therefore void. (p. 499.)

2. CIGARETTES—*Original Package.*

    Where cigarettes are manufactured in a sister state, and placed in paper boxes for convenience of transportation and sale, and such boxes are provided with a proper label, giving the name of the cigarettes, the caution notice, the number of the factory, the number of the revenue district, the name of the state in which they are manufactured, and the proper internal revenue stamp, duly canceled, is pasted across the end of such package so as to seal the same, in accordance with the requirements of the act of congress and the internal revenue laws governing the packing, shipment, and sale of cigarettes, such paper box must be regarded as an original package; and its character will not be changed by its being placed, with other boxes of the same kind, in a wooden box for shipment.   (p. 497.)

Error to Circuit Court, Ohio County.

Charles Goetze was convicted of selling cigarettes without a license. The circuit court reversed the judgment, and the State brings error.

*Affirmed.*

John A. Howard and T. S. Riley, Attorney General, for the State.

S. G. Smith and W. W. Fuller, for defendant in error.

ENGLISH, PRESIDENT:

On the 3d. of September, 1895, Charles Goetze was indicted in the Criminal Court of Ohio county for selling without a license paper-wrapper cigarettes, in violation of chapter 11 of the Acts of 1895. On the 18th day of November, 1895, the defendant was tried upon said indictment, convicted, and judgment entered against him for the payment of a fine of ten dollars and costs of prosecution. The defendant obtained a writ of error to the Circuit Court of Ohio county, and on the 23d of June, 1896, the circuit court reversed the judgment of said criminal court, and held that the act of the legislature referred to was unconstitutional, and dismissed the prosecution against the defendant. It appears from the record that the defendant admits the sale as charged in the indictment, but contends that he had a right to make such sale, for the reason that the act referred to interfered with interstate commerce, and was therefore unconstitutional. From the judgment of the circuit court the State of West Virginia applied for and obtained this writ of error, assigning the following errors: First, that the circuit court erred in holding that the act of the legislature referred to is unconstitutional, and by reason thereof the defendant was not guilty as charged and convicted in the criminal court; secondly, that the circuit court erred in setting aside, reversing and annulling the judgment of the criminal court, and dismissing the prosecution,—contending that, if the criminal court had erred in its judgment, all the circuit court could do would be to reverse the judgment of the court below and send the case back for a new trial.

The facts of this case, as appears from the record and the agreement of counsel, are that the defendant, Charles Goetze, was on August 31, 1895, doing business as a druggist in the city of Wheeling, Ohio county, W. Va., and that he purchased from the American Tobacco Company (a corporation organized under the laws of the state of New Jersey, having a factory for the manufacture of cigarettes in the state of New York and in other states, but having none in the State of West Virginia) a consignment of cigarettes, which were packed in a large wooden box, which box contained a number of smaller paper boxes, each of which paper boxes contained ten cigarettes, which

cigarettes were known as "Sweet Caporal" and "Virginia Brights," the names being indorsed on the packages, and the proper revenue stamp affixed thereto; that the packages of cigarettes were not unpacked from the wooden case, except as they were handed out to purchasers in the paper packages of ten above described; that on the 31st day of August, 1895, the defendant sold to one William Bell two of said paper packages, at his drug store aforesaid, taking the same, at the time of sale, from said large box.

It is disclosed by the testimony and admissions of counsel that the defendant purchased the cigarettes in question from the American Tobacco Company, a New Jersey corporation doing business in New York, and that said cigarettes were packed in boxes, each containing ten, which boxes were properly indorsed and stamped as required by law, and that said paper boxes, for convenience of shipment, were packed in a wooden box, and shipped therein directly from the American Tobacco Company in New York, to the defendant, in the city of Wheeling, and after the wooden box was opened said cigarettes were sold in the paper boxes as they came from the factory, each containing ten, and not one cigarette at a time, as other cigars are sold by retail. In other words, they were sold by the box, and not by the cigarette. Were they sold by the original package, or should the defendant have sold the entire contents of the wooden box, without opening the same, in order to constitute the sale by the original package? We cannot say the wooden box constituted the original package, any more than we would say, if these paper boxes had been wrapped in thick paper and tied with twine, or packed in a barrel, for convenience in shipping, that the paper parcel or the barrel should be considered the original package. As the cigarettes came from the hands of the manufacturer, they were in paper boxes, each containing ten, for the convenience of their customers; and, whether they sold one box or a thousand, these paper boxes must be regarded as original packages. These packages, as before stated, had upon them the label giving the name of the cigarettes, the caution notice, the number of the factory, the number of the revenue district, the name of the state in which they were

manufactured, the name of the manufacturer, and the internal revenue stamp for ten cigarettes, duly canceled, pasted across the end of each package, so as to seal the same, in accordance with the requirements of the act of congress and the internal revenue laws governing the packing, shipment, and sale of cigarettes, all of which is required by law to constitute a package of cigarettes ready for shipment and sale; and, when these things are done, the package may be regarded as an original package. None of this indorsement or stamping is required to be placed upon the pine box or barrel or paper parcels in which these packages might be shipped, and opening the box, barrel, or parcel for the purpose of taking out the paper boxes cannot be considered as breaking the original package. These packages are, moreover, required to be put up in this particular manner by the act of congress, and a penalty is prescribed for a failure so to do. Rev. St. § 3392, contains the following provision, to wit: "That every manufacturerer of cigarettes shall put up all the cigarettes that he either manufactures or has made for him, and sells or removes for consumption or use, in packages or parcels, containing ten, twenty, fifty, or one hundred cigarettes each, and shall securely affix to each of said packages or parcels a suitable stamp denoting the tax thereon, and shall properly cancel the same prior to such sale or removal for consumption or use under such regulations as the commissioner of internal revenue shall prescribe." And section 3381 of said Revised Statutes, on the same subject, provides that "he shall neither sell nor offer for sale any tobacco, snuff, or cigars, except in original or full packages, as the law requires the same to be prepared and put up by the manufacturer for sale, or for removal for sale or consumption, and except such packages of tobacco, snuff and cigars as bear the manufacturer's label or caution notice and his legal marks and brands and genuine internal revenue stamps which had never been used."

This must be regarded as a federal question, and in consequence we must look to the federal decisions for precedents which shall control our conclusion. The identical question presented in this case was passed upon in the United States circuit court for the district of West Virginia *in re* Minor, reported in 69 Fed. 233, and it was

there held that "the act of West Virginia (Feb. 21, 1895) amending and re-enacting Code, c. 32, s. 66, so as to provide that a certain license fee shall be paid for selling cigarettes at retail, so far as it applies to cigarettes imported from another state and sold by the importer in West Virginia in the original package, and to cigarettes manufactured in another state, and by the manufacturer sent into West Virginia in the original package for sale by the agent of the manufacturer, and so sold in such package by such agent, is not an exercise of the police power of the state, but a regulation of interstate commerce, and therefore void." Goff, J., in his opinion in that case, on page 235, says: "The rule now well established is clearly stated by Mr. Justice Field in *Bowman* v. *Railroad Co.*, 125 U. S. 465, 507 (8 Sup. Ct. 689), in these words: 'Where the subject upon which congress can act under its commercial power is local in its nature or sphere of operations, such as harbor pilotage, the improvement of harbors, the establishments of beacons and buoys to guide vessels in and out of port, the construction of bridges over navigable rivers, erection of walls, piers, and docks, and the like, which can be properly regulated only by special provisions adapted to their localities, the state can act until congress interferes and supersedes its authority; but where the subject is national in its character, and admits and requires uniformity of regulation affecting alike all the states, such as transportation between the states, including the importation of goods from one state into another, congress can alone act upon and provide the needed regulations.' It follows that if congress has not legislated on any special subject relating to commerce, and the enactments of a state regarding the same are questioned, the only matter to be determined by the courts is, does the state legislation complained of amount to a regulation of commerce? If so, it is unconstitutional and void." Judge Goff, in his opinion, also says: "The argument submitted by counsel for the state, that the legislation by virtue of which the petitioner was arrested is but the proper exercise by the state of its police power, is, I think, without merit. That which does not belong to commerce may be regulated by the state, under its police power, but that which does belong to commerce falls within

the exclusive control of the United States. This act of the West Virginia legislature inhibits the sale by the petitioner (unless he first pays a tax for the privilege so to do) of the original packages of cigarettes imported by him into the State of West Virginia from the State of New York while they are still articles of commerce, and this demonstrates by the authorities I have referred to that it is not a proper use of the police power."

In the case of *Leisy* v. *Hardin,* reported in 135 U. S. 100 (10 Sup. Ct. 681), which was taken to the supreme court of the United States from the State of Iowa, the syllabus reads as follows: "A statute of a state prohibiting the sale of any intoxicating liquors except for pharmaceutical purposes, medicinal, chemical, or sacramental purposes, and under a license from a county court of a state, is, as applied to a sale by the importer, and in the original packages or kegs, unbroken and unopened, of such liquors manufactured in and brought from another state, unconstitutional and void, as repugnant to the clause of the constitution granting to congress the power to regulate commerce with foreign nations and among the several states." In that case the marshal of the city of Keokuk, under the statute of the state, had seized a number of barrels of beer, and eleven sealed cases of beer, which had been manufactured by Leisy & Co. in the state of Illinois, each of which kegs or barrels had placed upon it over the plug in the opening of each keg a United States internal revenue stamp of the district in which Peoria is situated. Said cases were substantially made of wood, each one of them containing twenty-four quart bottles of beer, each bottle of beer corked, and the cork fastened in with a metallic cap sealed and covered with tin foil and each case was sealed with a metallic seal. That said beer in all of the said kegs and cases was manufactured and put up into said kegs and cases by the manufacturers, Leisy & Co., and to open said cases the metallic seals had to be broken. That the property above described was transported by Leisy & Co. from Peoria, Ill., by rail, to Keokuk, Iowa, in said sealed kegs and cases, and was offered for sale by John Leisy, a resident of Keokuk, Iowa, who was agent for Leisy & Co., in the original keg and sealed case, as manufactured and put up by Leisy & Co., and transported by

them into the state of Iowa. An action of replevin was brought against said marshal to recover said property, which was decided in the state court in favor of the plaintiff, which decision was affirmed by the Supreme Court of Iowa, and was then taken to the supreme court of the United States, where the opinion of the court was delivered by Justice Matthews, who, after going into an exhaustive review of the subject, and citing numerous authorities in support of his position, concluded as follows: "The plaintiffs in error are citizens of Illinois, are not pharmacists, and have no permit, but import into Iowa beer, which they sell in original packages as described. Under our decision in *Bowman* v. *Railway Co.*, 125 U. S. 507 (8 Sup. Ct. 689), they had the right to import this beer into that state; and, in the view which we have expressed, they had the right to sell it, by which act alone it would become mingled in the common mass of property within the state. Up to that point of time, we hold that, in the absence of congressional permission to do so, the state had no power to interfere, by seizure or any other action, in prohibition of importation and sale by the foreign or nonresident importer. Whatever our individual views may be as to the deleterious or dangerous qualities of particular articles, we can not hold that any articles which congress recognizes as subjects of inter-state commerce are not such, or that whatever are thus recognized can be controlled by state laws amounting to regulations, while they retain that character, althought at the same time, if directly dangerous in themselves, the state may take appropriate measures to guard against injury before it obtains complete jurisdiction over them. To concede to a state the power to exclude, directly or indirectly, articles so situated, without congressional permission, is to concede to a majority of the people of a state, represented in the state legislature, the power to regulate commercial intercourse between the states, by determining what shall be its subjects, when that power was distinctly granted to be exercised by the people of the United States represented in congress, and its possession by the latter was considered essential to that more perfect union which the constitution was adopted to create." This question has frequently been before the courts of the different states and the Su-

preme Court of the United States, and other cases might be cited in full accord with the decisions we have quoted, but it is regarded as unnecessary for the determination of the case we are now considering. Having arrived at the conclusion that the packages of cigarettes sold by the defendant in this case were original packages, and the evidence showing that they were sold as they came from the manufacturer, without being broken, my conclusion is that the act of February 21, 1895, was not an exercise of the police power of the State, so far as it applies to the facts shown by the testimony in this cause, but a regulation of inter-state commerce, and therefore void; and the criminal court erred in overruling the defendant's demurrer to the evidence, and entering judgment against him. The judgment of the circuit court is therefore affirmed.

*Affirmed.*