104    465
119    388
119    394

## DONALD C. McGREGOR, Appellant, v. JOHN CONE.

**Constitutional Law:** INTERSTATE COMMERCE. Under Const. U. S. article 1, section 8, conferring on congress the exclusive right to regulate commerce between the several states, Acts Twenty-sixth General Assembly, chapter 96, prohibiting the sale of cigarettes within the state by all persons save jobbers doing an inter-state business, is unconstitutional and void, in so far as it amounts to a regulation of inter-state commerce.

ORIGINAL PACKAGES. An original package is that which is delivered by the importer to the carrier at the initial point of shipment in the exact condition in which it was shipped. *Collins v. Hill*, 77 Iowa, 181, and *State v. Coonan*, 82 Iowa, 400, disapproved, citing *State v. Board of Assessors*, 46 La. 146 (15 So. Rep. 10); *Keith v. State*, 91 Ala. 2 (3 So. Rep. 353); *United States v. 132 Packages*, 22 C. C. A. 228 (76 Fed. Rep. 364); *State v. Winters*, 44 Kan. Sup. 723 (25 Pac. Rep. 237).

SAME: *Cigarettes.* A pine box in which are packed for convenience in shipment packages of cigarettes, each of which contains ten cigarettes and sealed with an internal revenue stamp, without any other packing or inclosure around or about them except the box itself, is the original package of commerce, and when that is opened the packages of cigarettes are subject to the police power of the state as a part of the common mass of property therein.

DECISION OF REVENUE OFFICERS. The fact that the internal revenue department has recognized a package containing ten cigarettes as an "original package," for the purpose of taxation, is not conclusive, as the repacking of such packages in additional coverings is optional with the manufacturer. Disapproving, *State v. Goetze*, (W. Va.) 27 S. E. Rep. 225.

*Appeal from Cedar Rapids Superior Court.*—Hon. T.
M. Giberson, Judge.

Monday, January 24, 1898.

This is a *habeas corpus* proceeding in which plain-
tiff and appellant alleges that he was unlawfully
restrained of his liberty by defendant, who is sheriff of
Linn county, under a warrant of commitment issued by
one Rall, a justice of the peace in and for said county,
in pursuance of a judgment of conviction for violation
of what is familiarly known as the "Anti-Cigarette
Law." Plaintiff says that his commitment was and
is illegal, for the reason that while he sold cigarettes,
yet that the same were sold in the "original package" in
which imported, and that the law under which he was
convicted is unconstitutional in so far as it applies to
such sales. The trial court remanded the petitioner,
and from the order and judgment so entered he appeals.
—*Affirmed.*

*W. W. Fuller* and *John W. Redmond* for appellant.

*J. W. Grimm*, county attorney, and *Milton Rem-
ley*, attorney general, for the state.

Deemer, C. J.—The case was tried upon the follow-
ing agreed statement of facts: "The defendant pur-
chased in Illinois from the American Tobacco Company,
a corporation organized under the laws of the
state of New Jersey, and having a factory for the
manufacture of cigarettes in the city of New
York and state of New York, a number of packages of
cigarettes, manufactured at its said factory in New
York by said company. Each said package so pur-
chased contained ten cigarettes, and had upon it the

label bearing the name or brand of the cigarettes con-
tained in it, the caution notice, the number of the fac-
tory and of the revenue district in which the factory
was located, the name of the state in which such fac-
tory was, the name of the manufacturer, and the inter-
nal revenue stamp for ten cigarettes, duly canceled,
pasted across the end of each of said packages so as to
seal the same (which said stamp had to be broken and
destroyed in opening said package), and all other
requirements of the acts of congress and of the internal
revenue laws governing the packing, shipment, and
sale of cigarettes. The packages of cigarettes so pur-
chased by said defendant of said company were placed
in a common pine box, for convenience of shipment,
without any other packing or inclosure around or about
said packages of ten cigarettes each, and were so
shipped by said company to said defendant by a com-
mon carrier, from the factory of said company in the
city of New York, in the state of New York, to the ware-
house and offices of said company in the city of Chicago,
in the state of Illinois, and from Chicago, in the state of
Illinois; shipped by said company in the same package,
without opening the same, to the defendant, in Cedar
Rapids, in the state of Iowa, by common carrier. Upon
the arrival of such pine box at the place of business of
defendant in Cedar Rapids, in the state of Iowa, he
opened said pine box, by taking the lid therefrom, and
sold one of the packages, containing ten cigarettes, in
Cedar Rapids, Linn county, Iowa, on July 10, 1896, to
Andrew Harmon. The remaining packages of cigarettes
were not removed from said pine box, and are still
therein as they were received. The one package, of ten
cigarettes, sold to said Andrew Harmon, was of like
kind in every respect with the other packages in the
same box, and said Andrew Harmon was not a cus-

tomer outside of the state, but resided in the state of Iowa." It further appears that the American Tobacco Company submitted to the department of internal revenue of the general government a sample package of cigarettes similar to the one for the selling of which appellant was convicted, and received the following letter in response: "American Tobacco Company, No. 45 Broadway, New York, N. Y.—Gentlemen: In reply to your inquiry of April 3d, submitting a sample package of cigarettes bearing thereon the internal revenue stamp and the printed marks and caution label, and inquiring as to the necessity for a reinclosing, in an additional covering of paper, wood, or other material in placing the same upon the market, you are notified that said package being a statutory quantity, and properly stamped and canceled, and bearing thereon the caution label and the number of the manufactory, the district and state, and the number of cigarettes contained therein, meets with the approval of this bureau, being a proper and original package, as contemplated by existing laws and regulations. Therefore, the repacking of said packages in additional coverings of wood, paper, etc., is optional with the manufacturer, and does not concern this bureau. The option is permissible, under existing regulations (series 7, No. 8, Revised, page 46, and Internal Revenue Record, Vol. 32, page 365, dated November 22, 1886). Respectfully yours, "[Signed.]     John W. Mason, Commissioner."

The so-called "Anti-Cigarette Law," being chapter 96, Acts Twenty-sixth General Assembly, prohibits the sale of cigarettes within this state by all persons whomsoever, save jobbers doing an interstate business with customers outside of the state. Appellant contends that this law is unconstitutional, in so far as it interferes with commerce among the several states; that the

package which he sold was an "original package;" and that his detention was and is illegal. This statute was enacted in virtue of the police power of the state, and, unless it infringes upon some constitutional provision, it is undoubtedly valid. The contention is, however, that the statute is invalid in so far as it interferes with, interrupts, or embarrasses interstate commerce; on the theory that the federal constitution (article 1, section 8) confers upon congress the exclusive right to regulate commerce among the several states. It seems to be well settled by the later decisions of the United States court that, while the states have the undoubted right to control their purely internal affairs, yet whenever the law enacted in the exercise of this power amounts to a regulation of commerce among the states, as it does when it directly or indirectly inhibits the receipt of an imported commodity, or its disposition, before it has ceased to become an article of trade between one state and another, it comes in conflict with a power which has been invested in the general government, and is therefore void. That the use of the article is deleterious to the inhabitants of the state is not regarded as material, so long as it is recognized by the commercial world, by the laws of congress, and by the decisions of the courts as a commodity in which a right of traffic exists. *Brown v. Maryland,* 12 Wheat. 419; *Leisy v. Hardin,* 135 U. S. 100 (10 Sup. Ct. Rep. 681); *In re Rahrer,* 140 U. S. 559 (11 Sup. Ct. Rep. 865); *Bowman v. Railway Co.,* 125 U. S. 465 (8 Sup. Ct. Rep. 689). That cigarettes are a recognized commercial commodity must be conceded, and it follows that, in so far as the law in question amounts to a regulation of commerce, it is unconstitutional and void. There must of necessity be a time, however, when an article which is the subject of interstate commerce becomes subject to the taxing power and police regulations of the state; a time when the article loses its character as an import, and

its owner becomes subject to local regulations. In the case of *Brown v. Maryland* it is said that the point of time when the prohibition ceases, and the power of the state to tax commences, is not the instant when the article enters the country, but when the importer has so acted upon it that it has become incorporated and mixed up with the mass of property in the country, which happens when the original package is no longer such in his hands; that the distinction is obvious between a tax which intercepts the import as an import on its way to become incorporated with the general mass of property, and a tax which finds the article already incorporated with that mass by the act of the importer; and that the right to sell any imported article is an inseparable incident to the right to import it. In another case (*Bowman v. Railway Co., supra*), it is said in the dissenting opinion that while the question involved did not require a decision, yet the argument of the majority conducts to the conclusion that the right of transportation included by necessary implication the right of the consignee to sell in unbroken packages at the place where the transportation terminated. This language was subsequently approved by a majority of the court in the case of *Leisy v. Hardin*. Again, in the *License Cases*, 5 How. 504, Chief Justice Taney said: "These state laws act altogether upon the retail or domestic traffic within their respective borders. They act upon the article after it has passed the line of foreign commerce, and become a part of the general mass of property in the state." Chief Justice Waite declared in the *Bowman Case* that "it is only after the importation is completed, and the property incorporated is mingled with and becomes a part of the general property of the state, that its regulations can act upon it, except in so far as it may be necessary to insure safety in the disposition of the import until thus mingled." In the case of *Leisy v. Hardin* the beer was held for sale in

the original barrels and cases in which it was imported, and none of it was broken or opened upon the premises. Chief Justice Fuller said, referring to these facts, that the brewers who brewed and owned the beer had the right to import it into this state, and also had the right to sell it, by which act alone it would become mingled in the common mass of property within the state, and that up to that time the state had no power to interfere, by seizure or otherwise. All the cases agree that, when the article is once sold by the importer, it then becomes subject to the taxing and police power of the state; and it is quite generally held that the same result follows when the original package in which it is imported is broken, and the several parcels are so mingled with other property, or so exposed for sale, as to destroy the identity of the package as imported. See *Brown v. Maryland, supra; Robbins v. Taxing, Dis.,* 120 U. S. 489 (7 Sup. Ct. Rep. 592).

As the law is confessedly valid, except in so far as it interferes with or impedes commerce between the states, it follows that the constitutional provision has reference to and protects that which is the subject of commerce, and only so long as it preserves the form and remains the exact subject of importation. It is the "original package" which is protected. The question then arises, what is an "original package?" The definition commonly accepted, and believed by us to be correct, is that "it is a bundle put up for transportation or commercial handling, and usually consists of a number of things bound together, convenient for handling and conveyance." See *State v. Board of Assessors,* 46 La. 146 (15 South. Rep. 10); *Keith v. State,* 91 Ala. 2 (8 South. Rep. 353); *U. S. v. One Hundred and Thirty-Two Packages,* 22 C. C. A. 228 (76 Fed. Rep. 364). In the case of *State v. Winters,* 44 Kan. Sup. 723 (25 Pac. Rep. 237), it is said: "The original package was and is the package as it existed at the time

of its transportation from one state to another." It is quite apparent, we think, that the words "original package" have reference to the unit which the carrier receives, transports, and delivers as an article of commerce. The importer decides for himself the size of the package which he desires to import, and when he delivers it to the carrier for transportation he gives it the initial step, and from that time until sold in that form or broken, and transformed, it is the subject of interstate commerce. But when sold or broken, or when it changes form, it ceases to be an article of interstate commerce, and no longer enjoys this protection. The original package, then, is that package which is delivered by the importer to the carrier at the initial point of shipment, in the exact condition in which it was shipped. If sold, it must be in the form as shipped or received; for, if the package be broken after such delivery, it, by that act alone, becomes a part of the common mass of property within the state, and is subject to the laws of that state enacted in virtue of its police power.

Appellant contends that the internal revenue department has declared the small package sold by him to be "an original package," and that this is conclusive. We do not so regard it. The package referred to in the letter from the internal revenue department is the one recognized by that department for the purposes of taxation, and has no reference to the unit of commerce which is protected by the federal constitution. The commissioner of internal revenue, in his letter heretofore set forth, says that "the repacking of said packages in additional coverings is optional with the manufacturer, and does not concern this bureau." In the case at bar the "original package," the unit of commerce, was broken, the contents exposed to sale, and one of the small packages was sold. Such sale was, as it seems to us, of an article which had lost its distinctive character

as an import, and was therefore in violation of law. In this respect it differs from most of the cases to which our attention has been called, for in all but one of them it appears that the sales were of original and unbroken packages. See *In re Minor*, 69 Fed. Rep. 235; *State v. McGregor*, 76 Fed. Rep. 957; *Sawrie v. Tennessee* (U. S. Cir. Ct. Tenn.), 82 Fed. Rep. 615. The one case, and the only one, which we have been able to find holding to a contrary doctrine, *State v. Goetz*, (W. Va.) (27 S. E. Rep. 225), fails to recognize the distinction between the original package of commerce and that recognized by the internal revenue department of the general government for the purposes of taxation. There are a number of liquor cases in line with our holding as to what constitutes an original package. *State v. Winters, Keith v. State*, and *State v. Board of Assessors, supra*. See, also, *State v. Chapman*, 1 S. D. 414 (47 N. W. Rep. 411); *Haley v. State*, 42 Neb. 566 (60 N. W. Rep. 962); *Commonwealth v. Zelt*, 138 Pa. St. 615 (21 Atl. Rep. 7); *Commonwealth v. Bishman*, 138 Pa. St. 639 (21 Atl. Rep. 12); *Commonwealth v. Paul*, 170 Pa. St. 284 (33 Atl. Rep. 82); *Commonwealth v. Schollenberger*. 156 Pa. St. 201 (27 Atl. Rep. 30). *In re Beine*, 42 Fed, Rep. 545; *Smith v. State*, 54 Ark. 248 (15 S. W. Rep. 882). *In re Harmen*, 43 Fed. Rep. 372; *U. S. v. One Hundred and Thirty-two Packages, supra; Tinker v. State*, 96 Ala. 115 (11 South. Rep. 383). We find no cases in the federal courts holding to a contrary doctrine. On the contrary, it is said specifically in the case of *Brown v. Maryland, supra*, that, "if the importer breaks up the original packages for sale or for use, or changes the form in which they were imported, or they pass into second hands, the goods will lose their distinctive character as imports, and become subject to the taxing power of the state; and in such cases nothing that has been said will protect an article so acted upon by the importer." *Welton v. Missouri*, 61

U. S. 275. See, also, *State v. Shapleigh*, 27 Mo. 344; *State v. North*, 27 Mo. 464.

The question as to what constitutes an original package of liquor, was considered in the following cases, heretofore decided by this court: *Collins v. Hills*, 77 Iowa, 181; *State v. Coonan*, 82 Iowa, 400; *State v. Miller*, 86 Iowa, 639; *Hopkins v. Lewis*, 84 Iowa, 691. The matter was also referred to in *Wind v. Iler*, 93 Iowa, 324. What was said in *Collins v. Hills, supra*, must be regarded as dictum, for it was not essential to the determination of the question involved. Moreover, the decision of the controlling point in that case was overruled by the supreme court of the United States. Reference to the point in *Wind v. Iler* was purely arguendo, and *Hopkins v. Lewis* contains nothing in conflict with the views here expressed. Moreover, the rule of the *Collins Case* was questioned. *State v. Miller* simply follows *State v. Coonan*. In the *Coonan Case* it appeared that Coonan was the agent of non-resident importers; that he kept an "original package house," which was leased by his principals; that the liquor was shipped by the importers, consigned to themselves; that the beer was put into bottles and sealed and labeled at the brewery, and for convenience of shipment was placed in open frame boxes, with twenty-four separate compartments; that the whisky was sealed and labeled, and packed in barrels, and that Coonan removed the bottles from boxes and barrels, and sold them as sealed and labeled. It was held, under this state of facts, citing the *Collins* and the *Beine Cases*, that the separate bottles were the original packages. We have already seen that the *Collins Case* should not be regarded as authority upon the proposition involved, and an examination of the *Beine Case* will disclose that it does not hold to any such rule. The contrary seems to be the holding in that case.

Aside from this, however, the facts are essentially different from those in the case at bar. · Here the appellant is a resident of the state, engaged in the business of selling cigarettes at retail, and as such is amenable to all its laws which do not deprive him of some constitutional right. When he received the package which had been made up by the manufacturer, and started upon its journey, he opened it and displayed its contents, not the package, for sale; and it affirmatively appears that he sold one of the small parcels from the original package to a customer who applied for the same. We think these distinguishing features are quite important; for if it be the rule that all imported goods, no matter how treated or sold, are exempt from state taxation or regulation, it is apparent that the state must forego the exercise of the power of taxation and regulation, in cases where the right has never heretofore been questioned. See *State v. Wheelock*, 95 Iowa, 577. But, aside from these distinctions, we are abidingly convinced that the *Coonan Case*, if it holds to the doctrine contended for by the appellant, is wrong, and ought to be overruled; and in so far as it may be said to be out of harmony with this opinion, and the great weight of reason and authority, it is overruled. The order of the district court remanding the appellant is right, and it is AFFIRMED.