STATE OF IOWA, Appellee, v. C. C. TAFT COMPANY, Appellant.

COMMERCE: ''Original Packages.'' An "original package" of interstate commerce ceases to be such when, after completed delivery to the consignee at the point of destination, said consignee holds the same with *intent* to break such package, as his customary business may require, and sell the separate contents thereof at said point of destination, or within the state thereof.

GAYNOR and SALINGER, JJ., dissent.

*Appeal from Polk District Court.*—CHARLES HUTCHINSON, Judge.

MAY 7, 1918.

A search warrant was issued under the authority of the district court of Polk County, directed to the sheriff, under which, on April 28, 1917, he seized a quantity of cigarettes. The defendant, appellant, appeared, and claimed the ownership of the property, and asked the release of the same on the ground that the cigarettes were contained in the original packages, and had not lost their identity as interstate commerce; and were, therefore, not subject to seizure under the state law. After a hearing, the court ordered the condemnation and destruction of the property, and rendered

judgment for costs against defendant.    Defendant appeals.
—*Affirmed.*

*Dunshee, Haines & Brody,* and *Charles F. Maxwell,* for appellant.

*H. M. Havner,* Attorney General, *H. H. Carter,* Assistant Attorney General, and *Arthur T. Wallace,* for appellee.

PRESTON, C. J.—As to part of the cigarettes seized and described in the return of the search warrant, no claim was made by any person, and such were found by the court to be subject to condemnation and destruction.    There is no contention as to such part of the property.

On the trial, it was stipulated as follows:

"It is hereby stipulated between the parties, the attorney general, representing the state of Iowa, and the counsel for the claimants, that 27 cases of cigarettes: that is, three cases of 10,000 cigarettes each, Omars; 14 cases 5,000 cigarettes each, Camels; 7 cases 5,000 cigarettes each, Fatimas; 1 case 25,000 cigarettes, Nebos; and two cases containing an assorted lot of Egyptian Deities, plain and cork, Murads, Egyptian Luxuries, Moguls, plain and cork,—the contents of each case being made up of cartons containing small boxes of individual cigarettes,—now in the possession of the sheriff of Polk County, are the original packages shipped to the claimant in the ordinary course of interstate commerce from outside the state of Iowa, and at the time the same were seized, the same were in an unbroken condition, and in the same condition as handled in the ordinary course of interstate commerce, and were the usual and ordinary packages of interstate commerce.    It is further stipulated that the said cases were kept by the claimant with the intention, as its business demanded, to open the same and remove the contents therefrom and to sell the cigarettes to its customers at retail and wholesale within the state of Iowa, and for the further purpose of placing the same in re-

tail stores owned by the corporation in the city of Des Moines for sale at retail in broken packages. It is further stipulated that the said packages and cases were seized at the claimant's wholesale place of business in the city of Des Moines. It is further stipulated and agreed that the custom as above described had been the method of handling the business for at least a year; and that the certain broken packages in the possession of the sheriff are not in the original packages as they were received in the course of trade, and that these cigarettes were being kept in retail stores for sale."

Thereupon, claimant moved for an order directing the sheriff to return the property, which motion is as follows:

"Upon the facts stipulated, the claimant moves the court to make and enter an order directing the sheriff of Polk County to return and deliver over all of the original packages described in the foregoing stipulation, for the reason that the state of Iowa is without power, under the Federal Constitution, to authorize the seizure of goods shipped in the course of interstate commerce in original packages, and such goods have not become a part of the property of the state."

1. Appellant's first contention is that articles of interstate commerce, contained in the usual and ordinary packages of interstate commerce, do not lose their character as such until they have in some manner been commingled with the goods of the state. They cite *Brown v. State of Maryland,* 25 U. S. 419; *Low v. Austin,* 80 U. S. 29; *Leisy v. Hardin,* 135 U. S. 100; *Rhodes v. Iowa,* 170 U. S. 412; *Vance v. Vandercook Co.,* 170 U. S. 438; *Schollenberger v. Pennsylvania,* 171 U. S. 1; *McGregor v. Cone,* 104 Iowa 465; *State v. Eckenrode,* 148 Iowa 173. They contend, too, that the intent of the owner with reference to the future disposition of goods does not change the status of the property, and that, therefore, Sections 5006 of the Code and 5007-a of the Supplement to the Code, 1913, are unconstitutional, in so far as they affect interstate commerce.

Some of the cases cited are liquor cases, decided before the enactment of the Wilson bill, and like legislation, the principles of which are followed in the other cited cases. The language used in the cases is in regard to the point which is being decided in each particular case, and it is claimed that these principles are applicable to the instant case. There is no particular difficulty with the rule, and we do not understand counsel to differ materially in regard to the rule as applied to the facts in the cases cited.

Appellee cites the following provisions of the Federal Constitution, which they say are involved, to some extent, in this action:

"The congress shall have power * * * To regulate commerce with foreign nations, and among the several states, and with the Indian tribes." Constitution of the United States, Art. 1, Sec. 8, Par. 3.

"The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." Amendment IX, Constitution of the United States.

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." Amendment X, Constitution of the United States.

They contend that goods which have reached their destination after shipment from another state, though they may be still in original packages, may be taxed by the state, provided no discrimination is made between domestic and non-domestic goods (citing *Woodruff v. Parnham,* 8 Wall. [U. S.] 123, *American Steel & Wire Co. v. Speed,* 192 U. S. 500, *Brown v. Houston,* 114 U. S. 622, *Pittsburg & So. Coal Co. v. Bates,* 156 U. S. 577, *May v. New Orleans,* 178 U. S. 496, *Cook v. Marshall County,* 196 U. S. 261, *Hodge v. Muscatine County,* 196 U. S. 276) ; and further, that the Supreme Court of the United States has shown a disposition to uphold the police power of the state, even

where original packages are involved (citing on this *Plumley v. Massachusetts,* 155 U. S. 461, *Cook v. Marshall County,* supra, *Savage v. Jones,* 225 U. S. 501, 525, *Hennington v. Georgia,* 163 U. S. 299, 317) ; and that a state may, in the exercise of its police powers, impose inspection restrictions which affect interstate commerce (citing again *Savage v. Jones,* supra).

We are not disposed to review the cases cited, nor discuss the propositions so far advanced, for the reason that it is stated by appellant that the sole issue in this case is as to whether or not the original packages of cigarettes had lost their identity as articles of interstate commerce, and were, therefore, subject to seizure and destruction under the state law, by reason of the fact that the appellant, at the time of seizure, held the cigarettes with intent thereafter to break the packages and offer the contents for sale within the state, in violation of Section 5006 of the statute, under the conceded facts shown by the stipulation; and this is the point most strongly relied upon by appellee.

2. Counsel for appellant say that they have failed to discover any case which has arisen under a state of facts like those in the instant case; but they claim that the case of *Coe v. Town of Errol,* 116 U. S. 517, sustains the principle they are contending for. They concede, however, that the proposition there considered was not with reference to the effect of an intent in transforming articles of interstate commerce into domestic property, but, on the contrary, the question was as to the effect of the intent of the owner to transform domestic property into an article of interstate commerce. The facts of that case, stated as briefly as may be, are, substantially, that Coe had cut and piled certain logs upon the banks of a stream, for the purpose and with the intent of transporting them from the state of New Hampshire into the state of Maine. The defendant, the town of Errol, caused the logs to be assessed, under the authority of the state law. The logs had not been actually

started in the course of transportation to another state, nor delivered to a carrier for such transportation. The action was brought to set aside the assessment and to exempt the property, on the ground that it was within the protection of the interstate commerce clause of the Federal Constitution. The inquiry, as stated by the court in the course of the opinion, was as to whether the owner's state of mind in relation to the goods,—that is, his intent to export them, and his partial preparation to do so,—exempted them from taxation. The court further stated that there must be a point of time when they ceased to be governed exclusively by the domestic law, and began to be governed and protected by the national law of commercial regulation, and that moment seems to be a legitimate one for this purpose in which they commence their final movement for transportation from the state of their origin to that of their destination.

"When the products of the farm or the forest are collected, and brought in from the surrounding country to a town or station serving as an *entrepot* for that particular region, whether on a river or a line of railroad, such products are not yet exports; nor are they in process of exportation; nor is exportation begun until they are committed to the common carrier for transportation out of the state to the state of their destination, or have started on their ultimate passage to that state. Until then, it is reasonable to regard them as not only within the state of their origin, but as a part of the general mass of property in that state, subject to its jurisdiction, and liable to taxation there, if not taxed by reason of their being intended for exportation, but taxed, without any discrimination, in the usual way and manner in which such property is taxed in the state. * * * What we have already said, however, in relation to the products of a state intended for exportation to another state, will indicate the view which seems to us the sound one on that subject, namely, that such goods do not cease to be part of the general mass of property in the

state, subject, as such, to its jurisdiction, and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation to another state, or have been started upon such transportation in a continuous route or journey."

The court further says that, until the property is actually started, it may be sold or otherwise disposed of within the state. In that case, there was the intention alone, and the property had not started on the transportation. The case holds only that the right of a state to tax property originating within it continues until such property is actually started upon its interstate transportation. Mere intent is not enough, but the intention must concur with an act of transportation, in order to terminate the jurisdiction of the state. This is not inconsistent with our holding that interstate commerce ceases when property which has been in course of interstate transportation comes to rest in the hands of its owner, and there is the intent of the owner to break the original packages and to sell the same then and there. Any other holding would be inconsistent with a claim that the transportation has not ceased, or that the ultimate destination has not been reached. The intent of the owner and his act in holding the property at rest concur. Under the stipulated facts of the instant case, the property would be a part of the general mass of property in the state at its destination when, as here, the transportation had entirely ended, and defendants intended to break the packages and sell their contents, contrary to the laws of Iowa. The stipulation shows, not only that it was the intention of appellant to open the original packages, as its business demanded, and remove the contents therefrom, and sell the cigarettes to its customers at retail and wholesale within the state of Iowa, and to place the same in retail stores owned by plaintiff, for sale at retail in broken packages, but also that such had been appellant's custom and

method of handling the business for at least a year, and
that the broken packages in the possession of the sheriff
are not in the original packages as they were received in
the course of trade and were being kept in retail stores for
sale. The property had been delivered to the importer, ap-
pellant. There is no claim, and there could not be, under
the stipulation upon which the case was tried, that the
original packages were being held for further transporta-
tion to any point of original or ultimate destination, or
that they were being held for sale only in the form in which
they were received. Any such intention is expressly dis-
claimed by the stipulated facts. Counsel quote from Shakes-
peare. As we recall it, there is a passage somewhere that,
if a man lusteth, he is already guilty,—or something to that
effect.

Counsel for appellant argue that a mere intent may be
changed. But it has not been changed. The presumption
is that the intent will continue, and it did continue and
existed at the time the packages were seized. Appellee cites
on this proposition *State v. Blackwell,* 65 Me. 556; *Was-
serboehr v. Boulier,* 84 Me. 165, 169; *Cook v. Marshall Coun-
ty,* 196 U. S. 261, 271; 7 Cyc. 431.

The *Blackwell* case seems to be in point. There, the
defendant had imported liquors into the state of Maine,
which were in the original and unbroken packages when
seized. The jury was instructed that, if Blackwell had them
in his possession for the purpose of breaking the packages,
and with the intent to sell them in quantities less than an
imported package, by breaking them, the liquors would be
liable to forfeiture. The court said, at page 558:

"The precise point at which the Federal authority
ceases and that of the state begins, has been defined in gen-
eral terms by the Supreme Court of the United States. By
these decisions it is declared that while a sale of the goods
imported is the general object of importation, and the right

of sale is an inseparable incident thereto, still this incidental right is limited to a sale by the importer himself, and in the original package. And when by any act of the importer the thing imported has become a component part of the general mass of property in the state—as when the original package has been broken up for use or for retail by the importer, and also when the commodity has passed from his hands into the hands of a purchaser—it has then lost its distinctive character as an import and has become subject to the laws of the state. *Brown v. Maryland,* 12 Wheat. 419; *License Cases,* 5 How. 574. To the same effect is *Pierce v. State,* 13 N. H. 536, 581, and *State v. Robinson,* 49 Maine 285. A sale in the original package only being authorized by the Federal statute, the breaking and selling in a less quantity is without that authority, and is within the prohibition of the state law; and a fixed intent that the package shall be broken and sold must place the liquors in the same category. It would hardly be considered reasonable that the Federal law should protect property until an actual unauthorized sale were completed, when the intent to make such a sale is avowed. Such 'aid and comfort' to violators of the internal regulations of a state is not within the spirit of the regulations of foreign commerce. * * * We do not perceive any material difference in the two rulings made a, *nisi prius.* The intent to break and sell is the same in each —a customer only being wanted in each. Whether a purchaser ever calls or not is immaterial—the intent to sell whenever an opportunity occurs being the material fact which works the forfeiture."

That case was cited with approval in the. *Wasserbochr* case.

It is our conclusion that, since the defendant has admitted that it intends to break these packages from time to time, and sell the contents to retailers, or distribute the contents among its own retail stores, these packages have ceased

to be articles of interstate commerce, and have lost their distinctive character as such.

We conclude that the judgment of the district court was right, and it is, therefore,—*Affirmed.*

LADD, WEAVER, EVANS, and STEVENS, JJ., concur.

SALINGER, J. (dissenting).—It is agreed there was a time when the appellant had the right to sell the cigarettes seized in this proceeding in the original packages in which it had imported them; conceded that, at one time, no law of this state gave the right to seize these goods, and this for the reason that they were protected by the interstate commerce clause of the Federal Constitution. See *State v. Eckenrode,* 148 Iowa 173; *McGregor v. Cone,* 104 Iowa 465; *Leisy v. Hardin,* 135 U. S. 100 (10 Sup. Ct. Rep. 681, at 689) ; *Low v. Austin,* 80 U. S. 29. This immunity still exists, unless the importer has done something which empowers this court to declare that these goods are no longer in interstate commerce. But one thing is asserted to have worked this change. The majority opinion concedes there is no change unless it be effected because "the appellant, at the time of the seizure, held the cigarettes with intent thereafter to break the packages, and offer the contents for sale within the state, in violation of Section 5006 of the statute."

As an abstraction, an unexecuted intention accomplishes nothing and changes nothing. In Shakespeare's words, speaking of an unknown sin, naked intention is "as a thought unspoken." The most perfectly formed plan to murder does not threaten the liberty of the intending murderer, so long as what exists rests merely in unexecuted purpose. A white house remains white, despite a completely formed intention to paint it red. As an abstraction, then, these cigarettes did not lose their status as being articles in interstate commerce, though their owner confesses an intention to do something later which, when done, will deprive these goods of that status. But, of course, the law can make the entertaining of a specific intent a material thing.

Statute may decree that whether liquors may be seized shall depend upon the intent with which they are kept. But this presupposes power to deal with the liquors. The Federal law creates the immunity. If the Federal law does not take away its protection because of the naked intention to sell in broken packages, an express state statute that the immunity shall end when such intent is formed would be void. What is true of an express statute to that effect is equally true of a decision to that effect on part of a state court of last resort. So, while I agree that *State v. Blackwell,* 65 Me. 556, does hold that intention may change a status created by Federal law, such holding is not controlling. It is surely no stronger than a statute declaring the same thing. When we come to terminating a protection created by Federal law, we must look for our warrant to Federal law alone.

I am of opinion that the Supreme Court of the United States has spoken in terms of exclusion on this point; that it has affirmatively declared what alone will remove the protection of the commerce clause; and that, as intention is not mentioned, under the rule that what is expressed excludes what is not named, the effect of it is a holding that intention will not remove this protection. But it is not necessary to rely wholly upon this rule of construction, or upon implication. It seems to me *Coe v. Town of Errol,* 116 U. S. 517 (6 Sup. Ct. Rep. 475), expressly holds that intent will not change the relation of property to being in interstate commerce. True, the *Errol* case declares what will put property under the protection of the commerce clause. But that does not change the principle involved, and what is there held is just as applicable when the question is whether intent will remove the protection of the commerce clause. If intent to do what will give property the Federal protection does not effect such protection, then an intent to do what, if done, will take property out of interstate

commerce, cannot destroy the protection. If the *Errol* case settles that an intent to put goods into interstate commerce will not oust the dominion of the state over property, it is not given to me to understand why this does not as well settle that no mere intention to do what, if done, will restore the dominion of the state, is operative to restore such dominion. As well say that, though an intention to leave this state will not destroy the right to vote therein, that an intention to live in the state gives the right to vote therein. The *Errol* case over and again declares it is dealing with what will create a status. It defines over and again what acts will put property within the protection of the commerce clause, and so end the dominion of the state. It decides nothing except whether intent can change a status. It is quite adventitious that the decision was invoked by a question of whether the state of New Hampshire might tax certain property. Whether it might so tax was a mere vehicle. Surely, the holding on the effect of mere intent would have been the same if, instead of whether property might be taxed by the state, the question had been whether the state might seize and condemn that property. The decision does not make tax law. It does not hold what it does because the collection of a tax is involved, but because specified facts do not make the commerce clause operative, and, therefore, maintain a status which authorizes state taxation. The vitals of the decision is not that goods may be taxed, but that this may be done because intention, short of execution, does not put goods into interstate commerce, and so change the power of a state to tax. Suppose an attempt to collect a poll tax, and a defense that the state may not collect it because the defendant intends to remove. I take it a decision that the defendant must pay, while deciding that one is liable for a poll tax, would hardly be classed as one making tax law; and all would agree that the decision was not poll tax law, but "intent" law. The decision would not be a precedent on

tax law as such. It would be cited only for ruling on whether an intent is effective to destroy an existing condition with reference to tax laws, or with reference to anything else, where it becomes material to determine the power of intent to affect status. This, and just this, is the effect of the *Errol* case. In my opinion, it controls this case, and we should hold that the cigarettes seized are still within the protection of Federal law.

GAYNOR, J., concurs in this dissent.