A. L. HALEY v. STATE OF NEBRASKA.

FILED NOVEMBER 8, 1894.    No. 4609.

Intoxicating Liquors: ORIGINAL PACKAGES.    Where bottles
    of intoxicating liquor were each enclosed in a paper wrapper or
    box, which was sealed with sealing wax, and a number of the
    paper boxes, each containing a flask of such liquor, were packed
    in a wooden box by a party in St. Louis, Missouri, and shipped
    to his agent at Republican City, Nebraska, and the agent opened
    the wooden box and took the paper boxes in which the flasks of
    liquor were contained therefrom and sold them separately, held,
    that the wooden box was the "original package" and not the

sealed paper box or wrapper, and bottle therein inclosed, and such a sale was a violation of the provisions of the law of this state regulating the license and sale of malt, spirituous, and vinous liquors.

ERROR to the district court for Harlan county.  Tried below before GASLIN, J.

*W. S. Morlan,* for plaintiff in error, cited: *Leisy v. Hardin,* 135 U. S., 100 ; *State v. Winters,* 44 Kan., 723; *State v. Coonan,* 48 N. W. Rep. [Ia.], 921; *State v. Fraser,* 48 N. W. Rep. [N. Dak.], 343.

*George H. Hastings, Attorney General,* for the state, cited: *State v. Chapman,* 47 N. W. Rep. [S. Dak.], 411; *Brown v. State of Maryland,* 12 Wheat. [U. S.], 419 *State v. Shapleigh,* 27 Mo., 344; *State v. North,* 27 Mo., 464; *In re Beine,* 42 Fed. Rep., 546; *In re Harman,* 43 Fed. Rep., 372.

HARRISON, J.

July 14, 1890, an information was filed in the district court of Harlan county, in one count of which the defendant (plaintiff in error) was charged with the unlawful sale of spirituous liquor to one Charles Hecht on the 4th day of July, 1890, in said county.  From the record it further appears that on the 13th day of October, 1890, the plaintiff in error appeared in court accompanied by his attorney, and the state being represented by its attorneys, the case was called for trial, a jury was waived and the case submitted to the court on the following stipulated statement of facts:

"That said defendant A. L. Haley, on the 4th day of July, 1890, at Republican City, in Harlan county, Nebraska, did then and there sell to one Charles Hecht one-half pint of spirituous liquors, to-wit, one-half pint of whiskey, without obtaining a license, druggist's permit, or other authority therefor under the laws of the state of Nebraska.

"It is further stipulated that the liquor was sold by the said A. L. Haley, as agent for S. R. Cheadle, of St. Louis, Missouri, he having been appointed such agent by said S. R. Cheadle, as shown by Exhibit A, attached as a part of this stipulation; that the liquor was sold in a half-pint flask, packed in a paper box sealed with sealing wax, and was sold without said paper box being broken, and was shipped from St. Louis directly to Republican City, and in that package was sold directly to said Charles Hecht, and that a number of those paper packages were packed in a wooden box and so shipped in said wooden box, and that this said package was in such wooden box and said wooden box was opened to obtain said paper package therefrom."

Exhibit A is as follows:

"Know all men by these presents, that I, S. R. Cheadle, of the town of St. Joseph, in the state of Missouri, do hereby make, constitute, and appoint Anthony L. Haley, of the village of Republican City, in the state of Nebraska, my true, sufficient, and lawful agent for, and in my name, place, and stead, to sell and dispose of such beer, wine, brandy, whiskey, and other goods and merchandise as I may see fit to ship to him to be sold in said village of Republican City, it being provided and distinctly understood that all goods and merchandise so shipped and sold by said Anthony L. Haley shall be sold only in the original packages in which the same are shipped, and that the said Anthony L. Haley shall not, directly or indirectly, sell or otherwise dispose of any beer, wines, brandy, or whiskey for the period of one year from this date, except such as shall be shipped to him at said village of Republican City by me, and shall in no manner act as agent for any other person or persons, or engage in any other business than as agent for me for the period of one year from this date, dated this 3d day of July, 1890.

"S. R. CHEADLE.

"———, Witness."

From a consideration of the foregoing statement the court adjudged the plaintiff in error guilty as charged in the information, and sentenced him to pay a fine of $100 and costs of the action. Motion for a new trial was filed on behalf of plaintiff in error, which was overruled, and he has duly prosecuted a petition in error to this court. As will be gathered from the foregoing stipulated statement of facts, it is admitted that the sale of the liquor occurred, and that the plaintiff in error had no license or permit from the proper authorities to make such sale. The only question raised and argued by counsel for plaintiff in error is that the sale of the half-pint flask, inclosed in its paper box and the box sealed with wax, was a sale by him, as agent, in the original package in which it had been shipped to him by his principal from St. Louis, Missouri, to Republican City, in this state, and was a sale which was legal and allowable under the law regulating commerce between the states. The bottle of liquor sold was, it appears, packed with other bottles of liquor, similarly inclosed in sealed paper boxes, in a wooden box at St. Louis, the place of shipment, and in the wooden box shipped to and received by plaintiff in error at Republican City, the wooden box being opened and the paper box containing the half-pint of whiskey taken therefrom and sold. The case turns entirely upon the determination of which was the "original package," the wooden box in which the several bottles were packed for shipment, or the sealed paper box in which the half-pint flask of whiskey was enclosed.

In the year 1890 the supreme court of the United States rendered a decision in the case of *Leisy v. Hardin*, popularly referred to as the "Original Package Decision," in and by which the doctrine was promulgated and established that intoxicating liquors could be imported or shipped into any state from any other state, and the importer or shipper could, by himself or agent, so long as the liquors were in the unbroken original package in which they were ship-

ped, sell them, regardless of the provisions of the law of
the state into which the liquors were shipped.   The case
of *Leisy v. Hardin* is reported in 135 U. S., 100, 10 Sup.
Ct. Rep., 681, and was by a divided court, there being a
dissenting opinion written by Mr. Justice Gray and con-
curred in by Mr. Justice Harlan and Mr. Justice Brewer.
The decision of *Leisy v. Hardin* overruled and set aside
what had been considered as the settled doctrine or rule
upon the subject involved during a number of years prior
to its announcement.   The doctrine of the case was accepted
by the state courts as authoritative, and followed, and was
very quickly adopted, and advantage taken of the privilege
it accorded, by parties manufacturers or sellers of liquors;
and what, in popular parlance, were known as "original
package houses" sprung into existence in many states where
prohibitory laws or stringent license provisions had been
enacted and were in force.   There very soon followed an
act of congress called the "Wilson Law" (see act of con-
gress August 8, 1890, Pub. Laws, 51st Congress, First
Session, ch. 728), which destroyed the force and effect
of the decision in the case of *Leisy v. Hardin*.   The act
referred to was approved about three months after the an-
nouncement of the supreme court's decision.   In the mean-
time quite a number of cases had arisen in the courts of the
states where the business of selling in original packages
had been established, and the controversies in them had been,
by *habeas corpus* or other proceedings, in many instances,
transferred to the federal courts, and one of the questions,
very often a disputed one, and adjudicated in these cases,
was the one by which a definition of what was an original
package was sought and necessary to a decision of the partic-
ular case.   In discussing what is meant by an original pack-
age, in the case of *Commonwealth v. Schollenberger*, 27 Atl.
Rep. [Pa.], 33, the following language is used: "We have
examined the decisions of the supreme court of the United
States for a definition of the term 'original package.'   It

does not seem, however, to have received, and perhaps at this time is not capable of a precise definition that may be applied to it in all cases. The idea for which it stands is, however, not difficult of apprehension or statement. The methods adopted by manufacturers and importers for packing and preparing goods for transportation by sea or land differ with the differences in the character, bulk, and material of the merchandise itself. The general purpose is to adopt that form and size of package best adapted to the safe and convenient transportation and delivery of the particular class of goods to be moved, because the convenience of the trade will be best subserved thereby. Such packages, put up with a view to the convenience and security of transportation and handling, in the regular course of trade, are the original packages of commerce. If we look at the meaning of the words ' employed,' we are brought to the same conclusion. ' Original' means pertaining to the beginning or origin; the first or primitive form of a thing. ' Package' means a bundle or parcel made up of several smaller parcels, combined or bound together in one bale, box, crate, or other form of package. An ' original package' is such form or size of package as is used by producers or shippers for the purpose of securing both convenience in handling and security in transportation of merchandise between dealers in the ordinary course of actual commerce. Such packages are not always made up by putting smaller packages or bundles together, but may include any form of receptacle that shall hold a fixed quantity; as a barrel of sugar or salt, a bag of coffee, a chest of tea, and the like. The package must not be divided or its unity destroyed. When it is received unbroken from the importer through the custom house, or from the manufacturer by the ordinary channels of transportation, it is within the protection of the interstate commerce doctrine, and the state may not subject it to vexatious delays, appraisement, taxation, or trade restriction. But it has never been held that the im-

40

porter might subdivide his package and dispose of its several parts in detail. On the contrary, in many cases the United States courts have held that upon such subdivision or breaking of bulk the original package ceased to be such, and the goods became mixed with and indistinguishable from the merchandise already within the state, and therefore subject to state laws. This assigns to each jurisdiction its proper powers. The general government protects the citizens of the several states in the movement of their commodities across state lines for the purpose of commerce. The state regulates the retail trade conducted within its own borders and forbids the sale of such articles to its citizens as it finds to be injurious to them."

In the case of *Keith v. State* and *Rion v. State*, 8 So. Rep., 353, decided by the supreme court of Alabama, it was held: "Where several bottles of liquor, each bottle separately wrapped in paper labeled 'Original Package,' and marked with the name of the importer, are placed in an open box, and shipped therein into the state, the box is the original package." In Rion's case it appeared that the bottles were each wrapped in paper marked "Original Package" and placed in an open box with hay between them, the box marked with the number of bottles it contained and their sizes, and thus packed, they were shipped. In determining which was the original package the court says in the text of the opinion: "Merely labeling each bottle 'Original Package' did not make it one, if it was not really an original package. The term 'to pack,' in its ordinary signification, especially when used in reference to carriage, means to place together and prepare for transportation, as to make up a bundle or bale, and package is a bundle or bale made up for transportation. It may consist of a single article; but when separate articles are placed together and prepared for transportation, in a bundle, or bale, or box, or other receptacle, they do not form as many separate and distinct packages as there are articles, though they may be wrapped

separately.   The case, or box, or bale in which separate articles are placed together for transportation constitutes the 'original package' in the commercial sense."

In the case of *In re Harmon*, 43 Fed. Rep., 372, a case in which Harmon, as agent for one Jordan, a citizen of Tennessee, in Mississippi received from his principal by express boxes in which were packed bottles or flasks of whiskey, some holding a pint and others a quart each. The bottles were each inclosed in a paper wrapper or box, and the wrapper sealed with mucilage or sealing wax and were placed in pine boxes which were without covers, being furnished by the express company and to be returned to them when empty.   The bottles of liquor were kept in the pine boxes until a customer was obtained, when his purchase of one or more bottles was removed therefrom and delivered.   Harmon was informed against, arrested under the state law for making such sales of liquor, convicted, and sentenced to pay a fine and to imprisonment in the county jail, and upon being so imprisoned, appealed to the federal court for a writ of *habeas corpus*, and the court states its conclusion as to what constituted the original package, the pine box or the bottles, in the following language: "Where bottles of whiskey, each sealed up in a paper wrapper and closely packed together in uncovered wooden boxes furnished by an express company and marked 'to be returned,' are shipped from one state to another, the boxes, and not the bottles, constitute the 'original packages' within the meaning of the decisions of the supreme court upon the interstate commerce provision of the national constitution."   To the same effect are *Harrison v. State*, 10 So. Rep. [Ala.], 30; *State v. Chapman*, 47 N. W. Rep. [S. Dak.], 411; *Commonwealth v. Swihart*, 138 Pa. St., 629, 21 Atl. Rep., 11; *Smith v. State*, 15 S. W. Rep. [Ark.], 882. To the contrary are the Iowa cases of *State v. Coonan*, 48 N. W. Rep. [Ia.], 921, and *State v. Miller*, 53 N. W. Rep. [Ia.], 330, in which the doctrine announced in *State v.*

*Coonan* was followed. The rule stated in these cases decided by the Iowa court, and the reasoning employed in them upon which the court bases its decisions, are not so satisfactory or conclusive as to induce us to follow them.

We think the cases herein quoted and cited from the federal and state courts which hold that the box or package in which the importer of the liquors ships them, be it large or small, containing only one bottle or more than one, is the " original package" that the shipper, by his act in making up the package for shipment, determined what it should be, state the correct rule. If he desired it to consist of only one bottle, he could so have constituted it by shipping, in the case at bar, one of the flasks covered as it was alone; if he placed a number of them in a pine box, because of his act, the package which was to be transported when received by his agent could be sold in its condition when shipped, but if opened, then its several parts, if removed from the box, or case, could no longer be considered or sold each as an original package. It follows that the decision of the district court was right and its judgment is

AFFIRMED.