STATE OF IOWA, Appellant, v. ANDREW NESLUND, Appellee.

Pure food: LABELING PACKAGES. A dealer commits no offense against the pure food statutes, relating to labeling packages to show their· constituents, by taking small amounts from an ordinary commercial package properly labeled and selling the same to customers without further labeling the same

*Appeal from Polk District Court.*—HON. W. H. MCHENRY, Judge.

TUESDAY, MARCH 9, 1909.

DEFENDANT was indicted for the crime of selling, exchanging, delivering and having in his possession, with intent to sell, exchange and expose and offer for sale, misbranded and adulterated food. A jury was waived, and upon submission to the court the defendant was found not guilty. From the judgment the State appeals.—*Affirmed.*

*H. W. Byers,* Attorney General, and *Chas. W. Lyon,* Assistant Attorney General, for the State.

*Gillispie & Bannister,* for appellee.

DEEMER, J.—The sections of the law under which the

indictment was found being 4999a20, 4999a21, and 4999a22 (Code Supp. 1907), read as follows:

No person, firm or corporation, by himself, officer, servant or agent, or as the officer, servant or agent of any other person, firm or corporation, shall manufacture or introduce into the State, or solicit or take orders for delivery, or sell, exchange, deliver or have in his possession with the intent to sell, exchange or expose or offer for sale or exchange, any article of food which is adulterated or misbranded, within the meaning of this act. Provided, that none of the penalties set forth in this act shall be imposed upon any common carrier for introducing into the State, of having in its possession, any adulterated or misbranded articles of food, where the same were received by said carrier for transportation in the ordinary course of its business and without actual knowledge of the adulteration or misbranding thereof. Provided, that any manufacturer, wholesaler or jobber may keep goods specifically set apart in his stock for sale in other states, which might otherwise be in violation of the provisions of this act. . . . The term 'misbranded' as used herein shall apply to all articles of food, or articles which enter into the composition of food, the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular, and to any food product which is falsely branded as to the State, territory or country in which it is manufactured or produced, or which bears any statement of the weight or measure unless the same be a correct statement of the net weight or measure of the contents. For the purpose of this act an article of food shall be deemed to be adulterated: First. If any substance or substances has or have been mixed and packed with it so as to reduce or lower or injuriously affect its quality, strength or purity. Second. If any substance or substances has or have been substituted wholly or in part for the article. Third. If any valuable constituent of the article has been wholly or in part abstracted. . . . Eighth. . . . Provided, that an article of food which does not contain any added poisonous or deleterious ingredient shall not be deemed to be adulterated in the following cases: (1)

. . . (2) In the case of articles labeled, branded, or tagged, so as to plainly indicate that they are mixtures, compounds, combinations, imitations or blends, provided that the same shall be labeled, branded or tagged, so as to show the exact character and the name and quantity or proportion of each constituent thereof; and provided further, that nothing in this act shall be construed as requiring or compelling proprietors or manufacturers of proprietary foods which contain no unwholesome ingredient to disclose their trade formulas, except in so far as the provisions of this act may require to secure freedom from adulteration or imitation.

The case was tried upon an agreed statement of facts, the material parts of which are as follows:

That the defendant, on or about the 26th day of February, 1908, sold and delivered to one Lytton a package of lard amounting to about one pound. That the said package of lard was taken from a 50-pound can of lard, which was in the store of the said defendant, Neslund. That the said Neslund did not attach to the said 10-cent package of lard any label or tag showing the constituent elements thereof. That the said lard was in fact 96 percent pure lard, 4 percent beef suet, one ounce B. Heller & Company's lard purifier to 200 pounds of lard; that the said 50-pound can of lard in the store of the said defendant had standing against it a large placard which had printed thereon in large type the following: 'My lard is composed of the following ingredients and none other: Ninety-six percent pure lard, 4 percent beef suet, 1 oz. B. Heller & Co.'s lard purifier to two hundred pounds of lard.' That the said placard was tied with a cord around the can in which the lard was kept. The charging part of the indictment reads as follows: For that the defendant did have in possession with intent to sell, exchange and expose and offer for sale and exchange, and did sell, exchange and deliver to one E. C. Lytton a certain quantity of lard, so called which contained and had mixed with it beef stearin; that the same was not labeled, branded or tagged so as to plainly indicate that it was a mixture, compound, combination, imitation or blend; neither was it labeled, branded or tag-

ged so as to show the exact character and the name and quantity or proportion of each constituent thereof.

The statutes relied upon are penal in character, and must have a strict construction, and the only question in the case is: Do they cover such a transaction as is disclosed by the agreed statement of facts. It may be conceded for the purposes of the case that the article sold by defendant was adulterated, within the meaning of the statutes under consideration; but, in order to justify a conviction under the statute, it must be shown, as we think, that the article sold may properly be defined as a package. The lard which defendant sold was taken from a package which was properly labeled, and he is accused of having in possession, with intent to sell, a quantity of lard which was not properly labeled. The proof in no manner sustains this charge, unless the small amount taken by him from a properly labeled package, and sold to Lytton, was a package which in itself should have been labeled as the law provides. The state makes no contention that the original package from which the pound of lard was taken was not properly labeled as required by law, and its sole contention here is that no matter how small the quantity, or what the nature of the package, the retailer must label it. the same as if he were the manufacturer, and that each separate subdivision of the goods taken from a properly labeled package in and of itself constitutes a package which must be labeled as the one prepared by the manufacturer. This does not appear to have been the legislative intent; and, taking the act as a whole, we think it clearly appears that it is the package which is put up by the manufacturer or packer for commercial purposes. True the word "dealer" is used, but the term is found in conjunction with the words "manufacturer" or "packer," and undoubtedly has reference to the ordinary package put up by the dealer as a manufacturer or packer puts it up, as distinguished from

a small amount taken from a package properly put up by a manufacturer or packer. Of course, neither a manufacturer, packer or dealer will be allowed to avoid the law by putting up unusually or unreasonably large packages for the purpose of avoiding the law; but, if commercial usages are followed, and the ordinary sized packages put up for commercial use are properly labeled, a dealer is not liable to prosecution for taking small amounts from these properly labeled packages and selling to his customers without a label. A package usually means a bundle put up for commercial handling, *State v. Board of Assessors,* 46 La. Ann. 145 (15 South. 10, 49 Am. St. Rep. 318), and as used in the action under consideration, it means the package put up by the manufacturer or packer or dealer for ordinary commercial use. It does not apply, in our opinion, to small amounts taken from properly labeled packages to meet the wants or desires of a particular customer who does not care for the package so put up. We have already intimated that the trade can not, for the purpose of avoiding the provisions of the act, put up unusually large packages, or otherwise change their business so as to avoid the manifest purpose or intent of the act. But the act can not, without undue license, be held to apply to small sales from ordinary commercial packages properly labeled. The dealer has the right to supply this small demand; and, so long as his conduct is not such as to indicate a purpose to avoid the statute by selling what would ordinarily be deemed to be the equivalent of a commercial package, by taking that amount from an unusually large one, his act is not to be deemed in violation of law. In confirmation of this view, see *Haley v. State,* 42 Neb. 556 (60 N. W. 962, 47 Am. St. Rep. 718); *Commonwealth v. Schollenberger,* 156 Pa. 201 (27 Atl. 30, 22 L. R. A. 155, 36 Am. St. Rep. 32).

The judgment of the district court seems to be correct, and it is *affirmed.*