(C. D. 1354)

PACKAGE MACHINERY COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided July 27, 1951)

*Joseph F. Lockett* for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: This is a case of first impression. Both at the trial and in the briefs, the case has been fully and ably presented by counsel for the parties.

The plaintiff is engaged primarily in the manufacture of many different types of packaging and wrapping machines. Among them is one known as FA–2, which is used for wrapping boxes containing candy.

A few years ago the demand for machines of this type was so great that it became economically expedient to import from Canada 31 machines of the FA–2 type, which were made in accordance with plaintiff's specifications. Those 31 machines, which are described on the 31 consular invoices as a "candy box wrapping machine," form the subject of this controversy. It may be noted also that the machines are described in nearly all of the consumption entries either as a "candy box wrapping machine" or as a "machine for wrapping boxes of candy."

The collector of customs imposed duty on the machines at the rate of 27½ per centum ad valorem, pursuant to the provision for machines having as an essential feature an electrical element or device, in paragraph 353 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 353), as modified by the trade agreement between the United States and the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, effective January 1, 1939.

Plaintiff, in its protest as originally filed and as amended, invokes the following claims:

(1) Paragraph 353, as modified, *supra*, as machines for wrapping candy, having as an essential feature an electrical element or device, dutiable at 17½ per centum ad valorem.

(2) Paragraph 372 of said act, as modified, *supra*, as machines for wrapping candy (not having as an essential feature an electrical element or device), dutiable at 17½ per centum ad valorem.

(3) Paragraph 1559 of said act, by similitude to machines for wrapping candy, as provided in said paragraphs 353 and 372, respectively, as modified by said trade agreement, and dutiable at 17½ per centum ad valorem.

(4) Paragraph 1558 of said act, "as amended," as nonenumerated manufactured articles, and dutiable at 20 per centum ad valorem.

### THE STATUTES

Paragraphs 353 and 372 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, *supra*, read as follows:

Classified by the collector:

PAR. 353. Machines having as an essential feature an electrical element or device and which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device (except articles of a class or kind with respect to which United States import duties have been reduced or bound against increase pursuant to any agreement heretofore concluded under section 350 of such act, as amended); all the foregoing, not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule, 27½% ad val.

Claimed by plaintiff:

PAR. 353. Machines for packaging pipe tobacco, machines for wrapping cigarette packages, and machines for wrapping candy; combination candy cutting and wrapping machines; all the foregoing having as an essential feature an electrical element or device, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 17½% ad val.

PAR. 372. Machines for packaging pipe tobacco, machines for wrapping cigarette packages, and machines for wrapping candy; combination candy cutting and wrapping machines; all the foregoing, finished or unfinished, not specially provided for, 17½% ad val.

Paragraphs 1559 and 1558 of the Tariff Act of 1930, also invoked by plaintiff, are quoted below:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The following exhibits were received in evidence:

Plaintiff's exhibit 1—A pound box of Barbara Scott whipped creams illustrating the type of cellophane wrapping performed by an FA-2 machine.

Plaintiff's exhibit 2—A half-pound box of Mello-D-Mints likewise wrapped by an FA-2 machine.

Plaintiff's exhibit 3—A box of Barbara Scott whipped creams on which the wrapping is over the lower part of the box and over the candy, but not over the cover of the box, these boxes being used largely for display purposes.

Plaintiff's exhibit 4—A list of customers and destination of the imported machines here under consideration.

Plaintiff's exhibit 5—A bar of candy labeled "Schrafft's Caramallow Bar 1½ oz. net," illustrating a variety of candy wrapped on a type of wrapping machine other than an FA-2.

Plaintiff's exhibit 6—A bar of candy labeled "Schrafft's Krinkle Bar," also wrapped by a machine other than type FA-2.

Plaintiff's exhibit 7—A box of candy wrapped with a cellophane cover by one of the FA-2 imported machines.

Defendant's exhibit A—A catalog distributed by the plaintiff corporation illustrating various types of "candy wrapping machines." These machines, as the name indicates, wrap individual *pieces* of candy, whereas the machines here in controversy wrap *boxes* containing candy.

The following material facts of record are not controverted:

(1) Although in its brief plaintiff seems to express considerable doubt as to the provision of the tariff act within which the collector of customs classified the machines in controversy, nevertheless, at page 20 of the stenographic minutes counsel for plaintiff expressly stated that the merchandise "* * * was classified at 27½ percent under 353."

(2) That the machines in controversy have as an essential feature an electrical element or device and that they are not of a kind which could be designed to operate without such electrical element or device. (Note first portion of paragraph 353, *supra.*)

(3) That the machines were used exclusively for wrapping boxes of candy and are not adapted for wrapping individual pieces of candy.

(4) That some machines, notably those illustrated in exhibit A, a folder distributed by the plaintiff company illustrating machines manufactured by it and described as "candy wrapping machines," are used for wrapping individual pieces of candy as distinguished from the imported machines which are designed and adapted for use in wrapping packages or boxes containing candy. Said exhibit A

also illustrates so-called combination machines which may be used to cut and wrap pieces of candy, and which are adapted also for either cutting or wrapping pieces of candy. They cannot, however, be used for wrapping boxes containing candy.

In view of the conclusion we have reached, the issue resolves into a question whether the imported machines should be classified as "Machines having as an essential feature an electrical element or device * * *" in paragraph 353, as modified, *supra*, or as "machines for wrapping candy" in said paragraph 353.

The plaintiff called seven witnesses; the defendant, none. Since the basic facts upon which the case must be decided are not in dispute, it would serve no useful purpose to review in detail the testimony which was introduced on behalf of plaintiff. The witnesses either were engaged in the manufacture of, or were dealers in, machines like those in controversy, or were manufacturers of candy and confectionery who employed such machines in their factories.

At the trial and in its brief plaintiff disclaimed any intention to establish a commercial meaning differing from the common meaning of the phrase, "machines for wrapping candy," as used in paragraph 353, *supra*. On the theory that testimony may be introduced as an aid to the understanding of the court in arriving at the common meaning of statutory terms, the witnesses were permitted to give their understanding of the words "wrapping candy," from which it may be deduced that, according to their ideas, a "machine for wrapping candy" is one which wraps either the individual pieces of candy or the boxes or containers of candy. Such testimony is, of course, merely advisory, but for reasons which will appear, *infra*, we believe it is neither conclusive nor compelling.

An examination of the context of that portion of said paragraph 353 relied upon by plaintiff leaves little room for doubt as to its intended scope and meaning. It provides, so far as material here, for:

(1) "Machines for *packaging* pipe tobacco."
(2) "Machines for *wrapping* cigarette *packages*."
(3) "Machines for *wrapping* candy."
(4) "Combination candy *cutting and wrapping machines*." [Emphasis added.]

The language employed in the provisions above quoted suggests, first, inquiry as to the meaning of the words "packaging," "packages," and "wrapping."

"Packaging" is defined as "The act of making into a package." Funk & Wagnalls New Standard Dictionary, edition 1941. The same authority defines the noun "package" as:

The act of packing; also, that which is packed; an article or a quantity of anything wrapped up or bound together; a bale, bundle, packet, or parcel; any collection of goods baled, boxed, or otherwise enclosed for transportation.

Webster's New International Dictionary, edition 1943, defines the noun "package" as follows:

1. Act, process, or manner of packing.

\* \* \* \* \* \* \*

3. a A bundle made up for transportation; a packet; a bale; a parcel; as, a *package* of goods.

The same authority defines the transitive verb "package" as:

To make up into a package; also, to enclose in a package or container.

The Century Dictionary and Cyclopedia, edition 1913, contains the following definition of the noun "packaging":

The act of making into packages.—Packaging-machine, a machine for bundling yarns or other goods into compact shape for transportation; a bundling-press.

In Words and Phrases, permanent edition, volume 31, p. 6, the following appears:

**In general**

"Package" usually means a bundle put up for commercial handling. State v. Neslund, 120 N. W. 107, 108, 141 Iowa, 461.

\* \* \* \* \* \* \*

A package is a bundle put up for transportation or commercial handling. It is a thing in form to become as such an article of merchandise for transportation or delivery from hand to hand. It denotes a thing in form suitable for transportation or handling as an article of sale. United States v. Goldback, 25 Fed. Cas. 1342.

The foregoing definitions indicate that the words "packaging" and "packages" connote the action of making up or preparing articles in convenient form for transportation.

The noun "wrapping" is defined in Funk & Wagnalls New Standard Dictionary, edition 1939, as follows:

1. The act of one who or that which wraps. 2. That in which anything is wrapped.

Counsel for the parties in their briefs cite various definitions of the word "wrap," some of which are quoted below:

Funk & Wagnalls New Standard Dictionary, edition 1939—

wrap, *vt.* \* \* \* 2. To surround and cover by winding or folding; \* \* \*.

Webster's New International Dictionary, 2d edition, 1934—

wrap, *v.* \* \* \* 3. To envelop, as with paper, and secure, as with string, for protection during, or convenience or suitableness for, transportation or storage; to enclose in a package, parcel, or bundle; to do up; \* \* \*.

The Standard Dictionary of the English Language, 1910—

wrap \* \* \* 2. To surround and cover by winding or folding; infold; envelop \* \* \*.

While some of the authorites indicate that the act of wrapping as well as that of packaging may include covering for protection or suit-

ability for transportation and storage, the word "wrap" may be used in a more limited sense, to surround and cover by folding or enveloping. It is obvious, however, that in the portion of paragraph 353 relied upon by plaintiff, the words "packaging" and "wrapping" are used in a very different sense.

It will be observed that after providing for "machines for wrapping cigarette packages," the negotiators of the trade agreement, *supra*, provided for "machines for wrapping candy." Had it been the intention of the authors of that provision to provide for machines for wrapping *packages* of candy, they would have said so, just as they provided for machines for wrapping *cigarette packages*. A further indication of the intention of the negotiators to limit the provision for "machines for wrapping candy" to machines which wrap individual pieces of candy, rather than boxes containing candy, is found in the language of the phrase "candy cutting and wrapping machines" which immediately follows the provision for "machines for wrapping candy." It seems reasonable to suppose that a combined candy cutting and wrapping machine must be one which cuts candy into forms and shapes and at the same time wraps those individual pieces. (See exhibit A.) There is no suggestion in the language just quoted that the combination machine can cut candy and at the same time wrap it in boxes.

It is interesting to note that exhibit A not only illustrates machines which are confined to wrapping pieces of candy, but also machines which both cut and wrap individual pieces of candy.

An analysis of the provisions of paragraph 353, as modified, *supra*, leads us to the conclusion that the phrase "machines for wrapping candy" was not intended by the negotiators of the trade agreement, *supra*, to include candy box wrapping machines such as those involved in this controversy. In its brief plaintiff states in part:

* * * If it had been the intention of those who negotiated said T. D. 49753 to provide that * * * machines for wrapping candy * * * was limited to be wrapping pieces of candy they could easily have inserted appropriate language to effectuate such a purpose.

By the same token, if it had been the intention of the negotiators to provide for machines for wrapping *packages* of candy, it would have been a simple matter to employ appropriate language to effectuate that purpose, as was done with respect to machines for wrapping *packages* of cigarettes in said paragraph 353. We are clearly of the opinion that the language of the provision relied upon by plaintiff refutes the interpretation for which it contends.

It is a well-settled principle of law that resort to extraneous aids to the interpretation of a statute should not be made to create an ambiguity where none exists. *Thorens, Inc.* v. *United States*, 31

C. C. P. A. (Customs) 125, C. A. D. 261, citing *Railroad Commission of Wisconsin et al.* v. *Chicago, Burlington & Quincy Railroad Company*, 257 U. S. 563. In our opinion, the provision in paragraph 353, *supra*, for "machines for wrapping candy," when read in the light of its context, is not ambiguous and it becomes unnecessary to go behind the statute in order to give it an appropriate and reasonable interpretation. However, since counsel for plaintiff has invited our attention to statements quoted from a report of the United States Tariff Commission, volume 4, schedule 3, published in 1938, with respect to the trade agreement with the United Kingdom, *supra*, we shall give it brief consideration. The statements quoted in plaintiff's brief are set forth in the margin.[1]

Plaintiff invites particular attention to the "General Statement" on pages 3–83, which reads in part:

The reductions in rates of duty are confined to machines for * * * wrapping candy. These are the principal types of machines imported from the United Kingdom for packaging consumer goods in the *units in which they are customarily sold at retail.* [Italics those of plaintiff.]

From this it is argued that inasmuch as the boxes of candy illustrated by exhibits 1, 2, 3, and 7 are the units in which such boxes of candy are customarily sold at retail, it must follow that the machines which

---

[1] Page 3–83 : *"General Statement* :

"The reductions in rates of duty are confined to machines for packaging tobacco, for wrapping cigarette packages, and for wrapping candy. These are the principal types of machines imported from the United Kingdom for packaging consumer goods in the *units in which they are customarily sold at retail.* (Emphasis mine.) Because of rapid evolution in the field of machine packaging the terms, 'wrapping,' 'packaging,' and 'packing,' have distinct meanings only with reference to particular products ; the uses of the machines specified in the agreement can be identified from their names. The statistics presented subsequently relate to broader classifications of machines. The import caption is 'wrapping and packaging machines,' and the principal census caption is 'packaging machines.' "[1]
. "The agreement with the United Kingdom provides parallel reclassifications under paragraphs 353 and 372. The former covers machines having electrical elements and devices as an essential feature, and the latter covers machines not equipped with essential electrical devices."

\* . \* \* \* \* \* \*
Page 3–84 : *"Competitive conditions.*

"Machinery for packaging is made in all highly industrialized countries. In the production of most types of such machinery, United States manufacturers are fully as efficient as foreign producers. The British, however, appear to excel in the production of certain of these machines, such as those used for wrapping candy (particularly the ones which 'twist-wrap' toffee) ; those for packaging pipe tobacco and those for wrapping packages of cigarettes. Only a very small proportion of the packaging machinery used in the United States is imported from the United Kingdom, but, of the particular type referred to, it is probable that a large part of that currently installed comes from that country."

"[1] The import caption (Schedule A, Statistical Classification of Imports into the United States, U. S. Department of Commerce), established in 1936, reflects the early tendency to view packing as the opposite of wrapping, the former having the significance of inserting goods into a container, and the latter that of enveloping the goods. The term, 'packaging,' has recently come to include both of these groups of operations and the expression, 'packing,' is now extensively used in a general sense to indicate any machinery employed in the preparation of goods or packages for shipment or for sale at wholesale or retail."

wrapped such boxes are within the statutory phrase "machines for wrapping candy."

In the phrase last above quoted by plaintiff, the words "machines for * * * wrapping candy" omit the expressions "machines for packaging pipe tobacco" and "machines for wrapping cigarette packages," which we think throw an entirely different light upon the meaning to be given the phrase "machines for wrapping candy," especially so when coupled with the provision immediately following, for "combination candy cutting and wrapping machines."

Defendant quotes that portion of the report above referred to which reads:

* * * Because of rapid evolution in the field of machine packaging the terms "wrapping," "packaging," and "packing" have distinct meanings only in reference to particular products; the uses of the machines specified in the agreement can be identified from their names.

It is then argued that the language in paragraph 353, *supra*, when read in the light of the trade data above referred to, shows that it was the intent of the negotiators that pipe tobacco should be *packaged* by a certain type of machine; that cigarette *packages* should be *wrapped* by another type of machine; and that candy (not boxes containing candy) should be *wrapped* by still another type of machine.

In further support of its contention, defendant quotes from that portion of the statement on page 3–84 of the trade digest which reads:

* * * The British, however, appear to excel in the production of certain of these machines, such as those used for wrapping candy (particularly the ones which "twist-wrap" toffee) ; those for packaging pipe tobacco, and those for wrapping packages of cigarettes.

It is well known that English toffees, as well as many other types of hard candies, are individually wrapped pieces.

While reference to the trade data above quoted is not relied upon as an aid to construction in this case, nevertheless, an analysis of the portions of the report to which our attention has been invited tends to support our conclusion that the machines in controversy are not "machines for wrapping candy" within the meaning of said paragraph 353. In our view of the case, the machines are specifically provided for in paragraph 353, as modified, *supra*, as "Machines having as an essential feature an electrical element or device and which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device," as classified by the collector of customs, and dutiable at 27½ per centum ad valorem.

The alternative claim of plaintiff for classification in paragraph 372, as modified, *supra*, of said act is without merit, since the machines have as an essential feature an electrical element or device.

Inasmuch as the machines are specifically enumerated in paragraph 353, *supra*, the alternative claims for classification in paragraphs 1558 and 1559 are untenable as said provisions may be invoked only in the event an article is not enumerated.

We have examined the numerous authorities cited by counsel for the parties, but, in view of the conclusion we have reached, we do not deem it necessary to discuss them here.

The protest is overruled in all respects and judgment will be entered accordingly.